UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

ROBKIEM BROWN and HASSAN BOUCHET,

                  Plaintiffs,

        -v-

THE CITY OF NEW YORK, JAMES P. O'NEILL,
Commissioner of the New York City Police Department,
POLICE OFFICER ADEKUNDLE LONGE, SHIELD
NO. 1917 ET AL. AND OTHER NYC POLICE
OFFICER JOHN DOES ET AL.,

                  Defendants.

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/14/2023

19-cv-03375 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

    Defendants the City of New York, former Police Commissioner James P. O'Neill, and

Police Officer Adekunle[1] Longe ("Defendants") move, pursuant to Federal Rule of Civil

Procedure 56, for summary judgment against plaintiffs Robkiem Brown and Hassan Bouchet

("Plaintiffs").  Dkt. No. 65.

    For the following reasons, the motion for summary judgment is granted in part and

denied in part.

## BACKGROUND

    The following facts are drawn from Defendants' Local Rule 56.1 statement of facts, Dkt.

No. 67, and the evidence submitted by Defendants, and are construed in favor of the non-moving

party.[2]  Defendants sent the required Local Rule 56.2 Notice to Plaintiffs.  Dkt. No. 69.

---

[1] In the complaint, the officer's name is spelled "Adekundle Longe." Dkt. No. 1.  However, in
the arrest reports, his name is spelled "Adekunle Longe." *See, e.g.*, Dkt. No. 66-10.
[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in
numbered paragraphs, of the material facts as to which the moving party contends there is no

On August 31, 2016, livery cab driver Oumar Bah picked up a male passenger in his taxicab at the Fordham Road Metro North Station in the Bronx.  Dkt. No. 67 ¶ 1; Dkt. No. 66-1 at ECF pp. 3, 6; Dkt. No. 66-3; Dkt. No. 66-11 at ECF p. 3.  Upon reaching the passenger's destination, the passenger informed Bah that he was going to contact his brother to bring money for the cab fare.  Dkt. No. 66 at ECF p. 8.  Bah claims that when the passenger's brother arrived, the passenger and his brother attacked him, punched him in the left eye with a closed fist, and took $200, a tablet, and a cellphone from him.  *Id.*; Dkt. No. 66-3.

When the police arrived at the scene, Bah informed Officer Longe that he believed one of the assailants was wearing a red and white shirt.  Dkt. No. 67 ¶ 5; Dkt. No. 66-1 at ECF p. 3.  Officer Longe and several other members of the New York City Police Department ("NYPD") then commenced a search for the assailants.  Dkt. No. 67 ¶ 7; Dkt. No. 66-4; Dkt. No. 66-5.

genuine issue to be tried."  Local Civ. R. 56.1(a).  The non-moving party must, in response, submit a "correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Freedom Mortg. Corp. v. Heirs*, 2020 WL 3639989, at *1 n.1 (S.D.N.Y. July 6, 2020) (quoting *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014)).  This rule also applies to *pro se* litigants.  *Id.*  Plaintiffs in this action did not file a response to Defendants' Local Rule 56.1 statement, despite Defendants notifying Plaintiffs of the consequences of not responding to the statement.  Dkt. No. 69.  "Accordingly, the Court may conclude that the facts in [Defendants'] 56.1 Statement are uncontested and admissible."  *Heirs*, 2020 WL 3639989, at *1 n.1; *see also Brandever v. Port Imperial Ferry Corp.*, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014).  "Nevertheless, in light of the special solicitude afforded to *pro se* litigants when confronted with motions for summary judgment, the Court will in its discretion opt to conduct an assiduous review of the record when deciding the instant [m]otion."  *Heirs*, 2020 WL 3639989, at *1 n.1 (cleaned up); *see also Allah v. Annucci*, 2020 WL 3073184, at *1 n.1 (S.D.N.Y. June 10, 2020) (same); *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in defendants' Rule 56.1.").

While on the search, Bah spotted Plaintiff Hassan Bouchet in the window of an apartment and pointed him out to the officers, identifying Bouchet as the man who had robbed him.  Dkt. No. 66-5.  Several police officers knocked on the door of the apartment.  *Id*.  Bouchet answered the door, wearing a white and red shirt.  Dkt. No. 66-7 at 20.  Bah also pointed to Plaintiff Robkiem Brown.  Dkt. No. 66-6 at ECF p. 4.  Officer Longe arrested both Brown and Bouchet.  Dkt. Nos. 66-9, 66-10.

Brown and Bouchet were charged with robbery in the second degree and robbery in the second degree causing physical injury.  Dkt. Nos. 66-9, 66-10.  They were indicted by a grand jury for robbery in the second degree, robbery in the third degree, grand larceny in the fourth degree, petit larceny, assault in the second degree, assault in the third degree, and theft of services.  Dkt. No. 66-11.  Ultimately, the Bronx County District Attorney dismissed the charges against them on January 2, 2018.  Dkt. No. 66-2 at ECF p.2.

## PROCEDURAL HISTORY

Plaintiffs initiated this action by filing a complaint ("Complaint") against Defendants James P. O'Neill, the City of New York, Adekunle Longe, and John Does on April 16, 2019. Dkt. No. 1.  Plaintiffs were represented by counsel when they filed the Complaint.  *Id.*

The Complaint includes five causes of action.  First, the Complaint alleges that the "actions, conduct and policies, racial profiling and racial animus, practices and/or customs of [D]efendants as described above, violated [Plaintiffs'] rights to be free of an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution and to be free of a deprivation of liberty under the Fourteenth Amendment to the United [S]tates Constitution and the Civil Rights [A]ct of 1871, Title 42 U.S.C. §1983."  *Id.* ¶¶ 37–43.  The Complaint also alleges claims for state law false imprisonment, false arrest, and malicious prosecution.  *Id.* ¶¶ 1, 44–55.  The Complaint further seeks to hold the City of New York liable

3

for the actions of the individual defendants pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  *Id.* ¶¶ 56–59.

On March 4, 2021, Plaintiffs' counsel moved to withdraw from the action, noting that after he had reviewed relevant discovery, "it became clear to [him] that Plaintiffs' action against the named Defendants had no merit" and he advised them of that fact.  Dkt. No. 48 at ECF p. 2. He noted that he had asked the Plaintiffs to discontinue the action, but that he had not heard back from them regarding his last request.  *Id.*  He therefore asked to withdraw as Plaintiffs' attorney, requested that Plaintiffs be given thirty days to retain new counsel and noted that, if they did not, the Court could dismiss the action with prejudice.  *Id.* at ECF p. 3.  The following day, the Court granted the motion in part and denied it in part.  Dkt. No. 49.  The Court granted Plaintiffs' counsel's request to withdraw.  *Id.*  The Court provided that Plaintiffs had sixty days from the date of the Order to have new counsel appear or they should file a letter with the Court that indicates that they intend to pursue the action as *pro se* parties.  *Id.*

Plaintiffs each filed a letter with the Court on May 10, 2021, indicating that they intended to proceed with the action *pro se* until new counsel was hired.  Dkt. Nos. 54–55.  In response, the Court allowed Plaintiffs an extra thirty days to retain counsel, Dkt. No. 56, although no new counsel has appeared for Plaintiffs in this action.

The Court held a telephonic status conference on June 17, 2021.  Neither Plaintiff appeared at the conference, so it was rescheduled to July 9, 2021.  Dkt. No. 57.  At the July 9, 2021 conference, the Plaintiffs appeared *pro se*.  Dkt. No. 58.

On September 20, 2021, Defendants wrote to the Court requesting that the Court stay discovery and allow them to file motions for summary judgment.  Dkt. No. 59.  Defendants noted that Plaintiffs had not appeared at their scheduled depositions despite numerous reminders.

*Id.* at 1.  Defendants also stated that following Plaintiffs' failure to appear, Defendants emailed

Plaintiffs asking them to provide alternate dates for their depositions and heard nothing back.  *Id.*

Defendants noted that they had sufficient evidence to move for summary judgment.  *Id.* at 1–2.

The Court granted the request to stay discovery and scheduled a conference for October

14, 2021 to discuss summary judgment.  Dkt. No. 60.  At the conference held on October 14,

2021, Defendants appeared, but *pro se* Plaintiffs did not.  Minute Entry (Oct. 14, 2021).  The

Court subsequently approved Defendants' proposed briefing schedule for summary judgment.

Dkt. No. 64.  According to that schedule, Defendants' opening brief was due on December 14,

2021, Plaintiffs' opposition was due on January 21, 2022, and Defendants' reply brief was due

on February 21, 2022.  *Id.*

Defendants filed their motion for summary judgment, a declaration attaching supporting

evidence in favor of their motion, a Rule 56.1 Statement, a memorandum of law, and notice to

the *pro se* Plaintiffs pursuant to Local Civil Rule 56.2.  Dkt. Nos. 65–69.  Plaintiffs did not

respond by January 21, 2022.  On April 5, 2022, the Court ordered Plaintiffs to respond to the

motion for summary judgment by June 3, 2022.  Dkt. No. 71.  Brown filed a response seemingly

also on behalf of Bouchet, which was received by the Southern District of New York *Pro Se*

Office on May 25, 2022.  Dkt. No. 73.  Defendants filed a reply memorandum of law on June 6,

2022.  Dkt. No. 74.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'material' for these

purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue

of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. Of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130,132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir.), *certified question accepted sub nom*. *Jaramillo v. Weyerhaeuser Co. & Tech. Licensing Assocs.*, 894 N.E.2d 649 (N.Y. 2008), *and certified question answered*, 906 N.E.2d 387 (N.Y. 2009).  If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.*  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Nor may the non-moving party "rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motions are not credible." *Gottlieb v. Cnty. Of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

Since Plaintiffs are proceeding *pro se*, the Court affords "special solicitude" to them when considering a motion for summary judgment. *See Bannister v. Luis*, 2022 WL 19402511, at *2 (E.D.N.Y. Oct. 27, 2022), *report and recommendation adopted as modified*, 2023 WL 2325680 (E.D.N.Y. Mar. 2, 2023); *see also Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Such "special solicitude" requires reading the filings of a *pro se* litigant "liberally" so as to interpret them to "raise the strongest arguments that they suggest." *Minus v. City of New York*, 488 F. Supp. 3d 58, 63 (S.D.N.Y 2020) (citations omitted). Even so, nonmoving *pro se* plaintiffs may not rely only on the pleadings to defeat defendant's motion for summary judgment. *Pro se* plaintiffs must still "point to specific evidence in the record to carry [their] burden in summary judgment." *Luis*, 2022 WL 19402511, at *2.

## DISCUSSION

As noted, the Complaint alleges the following causes of action: (i) violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983; (ii) state-law false imprisonment; (iii) state-law false arrest; and (iv) state-law malicious prosecution. Dkt. No. 1 ¶¶ 1, 37–55. In moving for summary judgment, Defendants argue that Plaintiffs' federal and state false arrest claims and malicious prosecution claims fail because there was probable cause to arrest them and prosecute them and there is no evidence that Officer Longe acted with malice. Dkt. No. 68 at 3–5. In addition, under federal law, Defendants argue that, for a malicious prosecution claim, Plaintiffs must show that the underlying criminal case was dismissed in a manner that affirmatively indicated their innocence. *Id.* at 5. Defendants further argue that Plaintiffs' "bare-bones" search and seizure claim should be dismissed as Plaintiffs were lawfully arrested, no officer entered the apartment in which Plaintiffs were found, and no warrant was required for Plaintiffs' arrests. *Id.* at 9. Defendants also argue that Officer Longe is entitled to qualified immunity, *id.* at 10,

Plaintiffs have offered no evidence that the City of New York negligently hired, trained, or supervised Officer Longe, *id.* at 12, and have articulated no valid claims against either the City of New York or former Commissioner O'Neill, *id.* at 13–15.

In their opposition, Plaintiffs do not respond to the substantive argument raised by Defendants in their opposition to the motion for summary judgment.  Dkt. No. 73.  Instead, they note that they "strongly disagree" that they only appeared in court three times as they were ordered to court between fifteen to twenty-five times for their alleged crime.  *Id.* at ECF p. 1. They also attach court minutes stating that the District Attorney has video tapes of them committing the crime, which they note "probably" do not exist.  *Id.* at ECF p. 2.  They further state that these were the most horrific 2.5 years of their young lives "as young males of color and <u>no</u> criminal history."  *Id.*  They reiterate that they are still seeking compensation of $500,000.  *Id.* Plaintiffs also attach portions of their Complaint to their opposition.  *Id.* at ECF pp. 3–5, 11–13. They also attach minutes from a court conference in Bronx Criminal Court from July 17, 2017, in which former criminal counsel for Plaintiffs in that action notes that they are still missing discovery in the matter, stating "[t]he People claimed [video] exist[s] from the inception of this case; however, we still don't have it."  *Id.* at ECF p. 9.  In response, the Assistant District Attorney represents—as recorded by the minutes—that he believes "discovery is now being prepared to be turned over."  *Id.* at pp. 9–10.[3]

---

[3] In their reply memorandum of law, Defendants argue that Plaintiffs' failure to respond to their arguments in their motion for summary judgment constitutes abandonment of their claims and thus Defendants are entitled to summary judgment on those claims. Dkt. No. 74.  "Courts have regularly dismissed claims as abandoned where a plaintiff has failed to address them in opposing defendant's dispositive motions."  *Pollard v. New York City Health & Hosps. Corp.*, 2016 WL 5108127, at *4 n.7 (S.D.N.Y. Sept. 20, 2016); *see also Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012) (collecting cases).  However, where a *pro se* litigant fails to address every claim in its opposition to a motion for summary judgment, the Second Circuit has cautioned that

## I.     False Arrest and False Imprisonment

The Court will first address the federal and state law claims for false arrest and false imprisonment.  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Shaheed v. City of New York*, 287 F. Supp. 3d 438, 448 (S.D.N.Y. 2018), *aff'd sub nom. Shaheed v. Kroski*, 833 F. App'x 868 (2d Cir. 2020) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  "And '[t]he common law tort of false arrest is a species of false imprisonment,' such that the two share the same elements under New York law." *Id.* (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)).  Under New York law, a claim for false arrest or false imprisonment requires the plaintiff to show "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer*, 63 F.3d at 118.

If an arresting officer has probable cause to arrest, then the resulting confinement is privileged.  *Shaheed*, 287 F. Supp. 3d at 448.  "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).  Probable cause exists where

---

"[t]he district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014).  The Court therefore will exercise its discretion, decline to deem Plaintiffs' claims abandoned, and examine the record in front of it to determine whether summary judgment is legally and factually appropriate. *See Sandoz v. Doe*, 2020 WL 3318262, at *9 n.11 (S.D.N.Y. June 18, 2020) (declining to deem *pro se* litigant's claims abandoned even though litigant failed to respond to certain arguments in motion for summary judgment); *New York Univ. v. Factory Mut. Ins. Co.*, 2020 WL 1033532, at *3 (S.D.N.Y. Mar. 3, 2020), *aff'd*, 2021 WL 3136078 (2d Cir. July 26, 2021).  This is particularly appropriate, here, as Plaintiffs' statement in their opposition that they are "still seeking compensation 500,000," Dkt. No. 73 at ECF p. 2, indicates that they did not intend to abandon their claims. *See Jackson*, 766 F.3d at 196.

the facts known by the arrest officer at the time of the arrest objectively provided probable cause to arrest.  *Guan v. City of New York*, 2020 WL 6365201, at *3 (S.D.N.Y. Oct. 29, 2020), *aff'd on other grounds*, 37 F.4th 797 (2d Cir. 2022).  "Importantly, probable cause does not have to be 'predicated upon the offense invoked by the arresting officer, or even upon an offense "closely related" to the offense invoked by the arresting officer.'"  *Id.* (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (Sotomayor, J.)).  "On summary judgment, the existence of probable cause or arguable probable cause may be determined as a matter of law where 'there is no dispute as to the pertinent events and the knowledge of the officers.'"  *Shaheed*, 287 F. Supp. 3d at 449 (quoting *Weyant*, 101 F.3d at 852).

"'[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness,' unless the circumstances raise doubt as to the person's veracity."  *Kanderskaya v. City of New York*, 590 F. App'x 112, 112 (2d Cir. 2015) (quoting *Panetta*, 460 F.3d at 395).

"[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and [] it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."  *Jaegly*, 439 F.3d at 154.  In other words, the court must look to the validity of the arrest, not the validity of each charge.  *Id.*; *see Perez v. City of New York*, 2022 WL 4236338, at *11 (S.D.N.Y. Sept. 14, 2022).  Here, at the time of their arrest, there was probable cause to arrest Plaintiffs for robbery in the second degree.  In New York, a person is guilty of robbery in the second-degree when he forcibly steals property and "is aided by another person actually present."  N.Y. Penal Law § 160.10.1 (McKinney).

According to the undisputed evidence in the record, the complaining victim, Bah, told Officer Longe that he was assaulted and robbed by two males on August 31, 2016.  Dkt. No. 66-1 at ECF p. 8.  Specifically, Bah told the Officer that two individuals took his property by force.  He told Officer Longe that the individuals punched him in the left eye with a closed fist and took $200, one tablet, and a cell phone from him.  *Id.*  Bah told Officer Longe that one of the assailants was wearing a white and red shirt.  *Id.*  That same day, a canvass was conducted by the police of the area with Bah, and Bah pointed to Bouchet through a window and identified him to Officer Longe and other officers as the person who robbed him and attacked him.  Dkt. No. 66-5; Dkt. No. 66-8.  Bouchet was wearing a red and white shirt, the same item of clothing that Bah had previously identified as worn by one of the assailants.  Dkt. No. 66-7 at 20.  Bah also pointed to Brown.  Dkt. No. 66-6; Dkt. No. 66-7 at ECF p. 4; Dkt. No. 66-8.  The circumstances do not raise doubt as to the complaining victim's veracity.  "Indeed, as sources of information go, crime victims are among the most reliable; they usually can provide a first-hand, nonhearsay account of the criminal activity."  *Riccio v. New York*, 859 F. Supp. 2d 480, 485 (E.D.N.Y. 2012) (citation omitted).  These facts establish probable cause as a matter of law.  Plaintiffs' claims for false imprisonment and arrest are therefore dismissed.

## II.    Malicious Prosecution

Next, the Court addresses Plaintiffs' claims of malicious prosecution pursuant to § 1983 and New York state law.[4]  Dkt. No. 1 ¶ 1.  "Just as 'probable cause is a complete defense to a

---

[4] Citing Second Circuit case law, Defendants further argue that Plaintiffs' malicious prosecution claim under federal law should be dismissed as they cannot prove that the underlying criminal case against them terminated in a manner that affirmatively indicates their innocence.  Dkt. No. 68 at 7.  Specifically, they note that the underlying criminal case was dismissed because the complaining victim, Bah, refused to cooperate with the prosecution, not because Plaintiffs were deemed innocent.  *Id.*  Defendants rely on case law that has been overruled.  "On April 4, 2022, [] the Supreme Court decided *Thompson v. Clark*, 142 S. Ct. 1332 (2022), rejected the Second Circuit test for favorable termination, and held that '[t]o demonstrate a favorable termination of a

constitutional claim of false arrest and false imprisonment, . . . continuing probable cause is a complete defense to a constitutional claim of malicious prosecution.'" *Shaheed*, 287 F. Supp. 3d at 452 (quoting *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014)).  This is also true under New York law.  "Thus, 'when a court finds there was probable cause for an arrest, and in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie.'" *Id.* (quoting *Johnson v. City of Mount Vernon*, 2012 WL 4466618, at *5 (S.D.N.Y. Sept. 18, 2012)).

Summary judgment is granted as to these claims.  An "indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Goodloe v. City of New York*, 136 F. Supp. 3d 283, 292 (E.D.N.Y. 2015) (quoting *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003)).  Plaintiffs were indicted by a grand jury on multiple charges, namely robbery in the second degree, robbery in the third degree, grand larceny in the fourth degree, petit larceny, assault in the second degree, assault in the third degree, and theft of services.  *See* Dkt. No. 66-11.  The Court can also identify no evidence demonstrating that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Goodloe*, 136 F. Supp. 3d at 292.[5]  In addition,

---

criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction.'" *Perez*, 2022 WL 4236338, at *13 (quoting *Clark*, 142 S. Ct. at 1335).  In light of *Thompson*, Defendants' argument is meritless.

[5] Further, a showing of a criminal proceeding "instituted with malice" is required to establish a claim of malicious prosecution.  *Mitchell v. City of N.Y.*, 841 F.3d 72, 79 (2d Cir. 2016) (citations omitted).  This requirement is satisfied by evidence supporting "that the defendant . . . commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d

as previously noted, there was probable cause to arrest Plaintiffs and there is no evidence that any exculpatory facts came to light between Plaintiffs' arrest and their prosecution.  Although in their opposition to the motion for summary judgment, Plaintiffs note that the prosecutors had represented that a videotape of the crime exists, Plaintiffs do not claim that the videotape was exculpatory.  Dkt. No. 73 at ECF p. 2.  Instead, they imply that the videotape does not exist.  *Id.* Plaintiffs' malicious prosecution claims thus fail as a matter of law.

## III.   Unlawful Search and Seizure

Third, the Court turns to the unlawful search and seizure claim.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.  "Under § 1983, a plaintiff may recover money damages for unreasonable searches and seizures that violate the Fourth Amendment."  *Serrano v. City of New York*, 2018 WL 3392869, at *8 (S.D.N.Y. July 12, 2018), *aff'd*, 793 F. App'x 29 (2d Cir. 2019).  In addressing a claim for unreasonable search and seizure, "courts look to the reasonableness of the search when determining whether a search violated a plaintiff's constitutional rights."  *Hatcher v. City of New York*, 2018 WL 1583036, at *7 (S.D.N.Y. Mar. 27, 2018).

To the extent Plaintiffs claim that Defendants unlawfully searched Plaintiffs and their possessions at the time of their arrest, the Court grants summary judgment to Defendants and dismisses this claim.  Officers are, as a general matter, allowed to conduct "reasonable searches incident to a lawful arrest."  *Serrano*, 2018 WL 3392869, at *8.  "Therefore, to the extent that there was probable cause to support plaintiffs' arrests, any reasonable searches incident to their arrests were also lawful."  *Id.*; *see also Arizona v. Gant*, 556 U.S. 332, 338 (2009); *Johnson v.*

Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.S.2d 443, 445 (N.Y. 1978)).  No such evidence exists here.

*City of New York*, 2020 WL 2732068, at *7 (S.D.N.Y. May 26, 2020) ("[I]f there was probable cause to support Plaintiff's arrest, any reasonable search incident to his arrest was also lawful."); *Guerrero v. City of New York*, 2013 WL 673872, at *4 n.3 (S.D.N.Y. Feb. 25, 2013) ("[T]o the extent that Guerrero is basing his § 1983 claim on an allegedly unreasonable search, this claim fails as well, because a search incident to a lawful arrest is *per se* reasonable.").  Because there was probable cause to arrest Plaintiffs as a matter of law, *supra* Section I, Defendants' motion for summary judgment as to the search and seizure claim is granted.

To the extent Plaintiffs claim that Defendants unlawfully seized them and arrested them without a warrant, Defendants are not entitled to summary judgment.  Defendants argue that summary judgment should be granted on this claim as no warrant was required for Plaintiffs' arrest as they were standing directly in the doorway when it occurred.  Dkt. No. 68 at 9.  They also note that Bouchet voluntarily opened his door, such that the officer could see, hear, and touch him and thus was considered in public during the arrest.  *Id.* at 10.  In support of this position, Defendants cite to the Supreme Court's decision in *United States v. Santana*, 427 U.S. 38 (1976), which they claim stands for the proposition that where a suspect of a crime is standing directly in a doorway and the suspect has voluntarily opened his door, a warrant is not required. Dkt. No. 9–10.  This argument fails.

Contrary to Defendants' claim, there is a disputed issue of fact as to where Plaintiffs were standing when they were arrested.  Although Brown testified at a 50(h) hearing that he and his brother were standing next to each other in the doorway prior to their arrest,  Dkt. No. 66-6 at ECF pp. 2–3, and Bouchet gave a post-arrest statement in which he stated that he was placed under arrest only after the police asked him to step outside of the apartment, Dkt. No. 66-5, other evidence supports that Plaintiffs were inside the home when they were arrested, Dkt. No. 66-7.

Specifically, Bouchet testified at a 50(h) hearing that he and his brother were arrested after police knocked on the front door of their apartment, *id.* at ECF p. 2, Brown asked if there was a problem, the police "grabbed [Brown] from the house," and then "grabbed [Bouchet] from the house," *id.* at ECF p. 3.  Bouchet stated that, in conducting the arrest, police did not enter the home, but instead reached inside the house and pulled on his shirt.  *Id.* at ECF pp. 3–4.  Bouchet also stated that when these events occurred, he was standing in the living room "[t]wo feet" away from the front door.  *Id.*

Bouchet's testimony at his 50(h) hearing that Plaintiffs were inside their home at the time of their arrest is significant.  In *United States v. Allen*, 813 F.3d 76, 78 (2d Cir. 2016), the Second Circuit addressed the question whether a suspect who is inside the threshold of his home may be arrested without a warrant.[6]  In that case, four police officers went to the defendant's home to arrest him for an alleged assault but did so without a warrant.  *Id.*

> After they arrived, the officers knocked on Allen's door.  Allen heard the knock, and stepped onto his second-floor porch.  One of the officers requested that Allen come down to speak with him; Allen complied. Allen opened the door to his apartment, and during the next five to six minutes that he spoke with the officers, he remained "inside the threshold" while the officers stood on the sidewalk.

*Id.* at 79.  From the threshold of his home, Allen denied the allegations against him and the officers then placed Allen under arrest.  *Id.*  Allen moved to suppress evidence seized incident to arrest on the basis that his warrantless in-home arrest violated the Fourth Amendment.  *Id.*  The district court denied the suppression motion, after holding that the "pivotal inquiry is whether law enforcement crossed the threshold of the home in order to effectuate the arrest."  *Id.* at 80.

---

[6] The Court notes that while this case appears to be controlling, Defendants failed to cite it in their motion for summary judgment even though Plaintiffs are proceeding *pro se*.  *See* New York Rule of Professional Responsibility 3.3(a)(2).

The Second Circuit reversed.  The court held that "where law enforcement officers have summoned a suspect to the door of his home, and he remains inside the home's confines, they may not effect a warrantless 'across the threshold' arrest in the absence of exigent circumstances."  *Id.* at 82.  The Circuit stated: "[If] the fundamental Fourth Amendment protection of the home [is] to retain [its] vitality, the rule must turn on the location of the defendant, not the officers, at the time of the arrest."  *Id.* at 85.  The court thus concluded that "irrespective of the location or conduct of the arresting officers, law enforcement may not cause a suspect to open the door of the home to effect a warrantless arrest of a suspect in his home in the absence of exigent circumstances."  *Id*.  The court continued that this "rule provides clear guidance to law enforcement, avoids undue complexities and perverse incentives to householders not to open their doors to inquiring police officers, and most importantly, ensures that the Fourth Amendment protections, which are at their zenith in the home, are adequately protected."  *Id.* at 89.  The court held that because Allen was arrested while still in his home and no exigent circumstances existed, a warrant was required for his arrest.  *Id.*

Thus, Bouchet's 50(h) testimony, if believed, would put this case into the *Allen* framework.  Construed in the light most favorable to Plaintiffs, the evidence would support that they were arrested while within the threshold of their home.  The officers summoned Plaintiffs to open the door by knocking and the officers lacked a warrant for Plaintiffs' arrest.  Defendants do not argue that there was evidence of any exigent circumstances that would justify a warrantless arrest of Plaintiffs while they were inside the home.

That Bouchet's account of his arrest in his post-arrest statement differs from the account of his arrest in his 50(h) testimony does not prevent Plaintiffs from relying on the 50(h) testimony to demonstrate that a material issue of disputed fact exists.  If Bouchet testifies

consistently with his 50(h) testimony, the jury could return a verdict for Plaintiffs on their illegal search and seizure claim.  Bouchet's conflicting post-arrest statement may reflect on the veracity of Bouchet's account of Plaintiffs' arrest at his 50(h) hearing, but "[i]t is a bedrock rule of civil procedure that a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented," except in rare circumstances.  *See Frost v. New York City Police Dep't*, 980 F.3d 231, 245 (2d Cir. 2020) (cleaned up).  The circumstances here do not resemble those presented where a sham affidavit is used, after discovery is complete and the plaintiff has been deposed, to manufacture a genuine issue of fact where none might otherwise exist.  The sham affidavit doctrine prevents the non-moving party from raising an issue of fact "simply by submitting an affidavit contradicting his own prior testimony" as such conduct would "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000) (citation omitted).  "Its logic is that the summary judgment process is compromised where a party, after having been examined on an issue and in that examination setting forth one version of facts, compromises his own testimony in an affidavit or declaration submitted only after discovery is closed and in response to the other side's motion for summary judgment."  *See Savarese v. City of New York*, 547 F. Supp. 3d 305, 328 (S.D.N.Y. 2021), *appeal withdrawn*, 2022 WL 351054 (2d Cir. Jan. 14, 2022); *see Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014).  The testimony here that creates a genuine issue of material fact was delivered before the motion for summary judgment was made and without discovery having been closed.  Defendants had access to the testimony—they submitted it in connection with their motion for summary judgment.  Had they wished to question Bouchet or Brown about these conflicting accounts of their arrests, there would be (and is) time enough to do so.  Defendants

could have pushed to obtain the depositions of Plaintiffs and, when they failed to appear, could have moved to compel their appearance.

The testimony of Brown is ambiguous as to where he was located when he was placed under arrest.  However, even if the Court construed the testimony to indicate that he was not inside the home, that would not entitle Defendants to summary judgment with respect to Brown. Even where the non-moving party has testified under oath or given a statement to an account that would defeat his claim, he can rely upon the testimony of other eyewitnesses to create a triable issue.  In short, a plaintiff can ask a jury to disbelieve his prior testimony and to believe that of another witness in a position to provide competent evidence.  *See Savarese*, 547 F. Supp. 3d at 329 ("[T]he Court must consider any testimony—whether from the plaintiff, the defendant, or a non-party—that forms the version of events most favorable to the non-moving party." (citation omitted)).  A jury thus could choose to believe the testimony of Bouchet—a witness to Brown's arrest—that Brown was grabbed when he was inside the house by the officers in assessing the merits of Brown's claim.  Defendants accordingly are not entitled to summary judgment on Plaintiffs' claim that their constitutional rights were violated when they were arrested without a warrant.

*Santana*, 427 U.S. 38, is not to the contrary.  In that case, the Supreme Court held that no warrant was required to arrest a defendant who "was standing directly in the doorway one step forward would have put her outside, one step backward would have put her in the vestibule of her residence," *id.* at 40 n.1, because she was standing in an area where she had no expectation of privacy, *id.* at 42.  The Court stated: "She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.*  The plaintiff in *Santana* was standing in the doorway with the door open

based entirely on her own accord.  Here, however, the jury could believe that the door was only opened after the officers knocked on it and that Plaintiffs were inside the house when they were arrested.  *Allen* thus applies and the Court denies summary judgment on this basis.

## IV.   Unlawful Discrimination Based on Race

Plaintiffs also appear to claim that Defendants unlawfully discriminated against them based on their race in violation of the Fourteenth Amendment's Equal Protection Clause.  Dkt. No. 1 ¶ 39.

"The Fourteenth Amendment to the United States Constitution declares that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'"  *Brown v. City of Oneonta, New York*, 221 F.3d 329, 336–37 (2d Cir. 2000) (quoting U.S. Const. amend. XIV, § 1).  "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'"  *Id.* (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  "To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race."  *Id.*

Here, although Plaintiffs allege that "Defendants' practice of racial profiling and of arresting persons of minority descent simply because they are of minority descent has been found to be a fact and has found to have been occurring on a systematic and pervasive basis," Dkt. No. 1 ¶ 42, and that they were arrested merely because they were "African American," *id.* ¶ 1, the evidence in the record does not support those allegations.  Instead, the evidence indicates that Plaintiffs were arrested by Defendants because they were identified by the complaining witness as the persons who had robbed him.  Dkt. No. 66-8.  The Court therefore grants summary judgment as to this claim.

### V.     Qualified Immunity

Defendants move for summary judgment as to all claims against Officer Longe on the basis that he is entitled to qualified immunity.  Dkt. No. 68 at 10.

 "Qualified immunity—a concept derived from common law—affords law enforcement officers a broad shield from claims for money damages arising from the performance of their duties."  *Ganek v. Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017).  "Police officers are immune from § 1983 liability provided 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrard v. Redmond*, 2018 WL 11213053, at *6 (S.D.N.Y. Mar. 5, 2018) (quoting *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016)).  Accordingly, "[t]he shield applies 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'"  *Leibowitz*, 874 F.3d at 80 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  Summary judgment should only be granted on qualified immunity grounds where "the evidence is such that, even when it is viewed in the light most favorable to the plaintiff and with all permissible inferences drawn in his favor, no rational jury could fail to conclude that it was objectively reasonable for the defendant[ ] to believe that [he was] acting in a fashion that did not violate a clearly established right."  *Redmond*, 2018 WL 11213053, at *6 (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)).

Here, as discussed, there is a triable issue of fact as to whether Officer Longe violated Plaintiffs' rights under the Fourth Amendment by conducting a warrantless arrest of them while they were within the threshold of their home.  *See supra* Section III.  Evidence in the record supports that the officers—including Officer Longe—summoned Plaintiffs to the door of their home to arrest them and then reached into the home to arrest Plaintiffs who stood inside.  *See id.* If true, such conduct would violate Plaintiffs' Fourth Amendment rights as a law enforcement

officer may not "summon a suspect to the door of his home and place him under arrest while he remains within his home, in the absence of exigent circumstances." *Allen*, 813 F.3d at 82, 88.

Such rights were also clearly established at the time of the challenged conduct. "In deciding whether a particular right was clearly established as of a particular time," courts look to "(i) whether the right at issue was defined with reasonable clarity; (ii) whether the Supreme Court or the Second Circuit had affirmed the existence of the right; and (iii) whether reasonable police officers in the defendants' position would have understood from the existing law that their conduct was unlawful." *Townes v. City of New York*, 176 F.3d 138, 144 (2d Cir. 1999). The Supreme Court has instructed that although the principle of "'clearly established law' should not be defined 'at a high level of generality,'" it is met where the court identifies "a case where an officer acting under similar circumstances [] was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 79 (2017); *see Mitchell v. City of New York*, 749 F. App'x 75, 77 (2d Cir. 2019). "The case need not be directly on point, 'but the existing precedent must place the lawfulness of the particular arrest beyond debate.'" *Mitchell*, 749 F. App'x at 77 (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018)).

Here, prior to the time of Plaintiffs' arrest—which occurred on August 31, 2016—the Second Circuit had held in *Allen* that "where law enforcement officers have summoned a suspect to the door of his home, and he remains inside the home's confines, they may not effect a warrantless 'across the threshold' arrest in the absence of exigent circumstances." 813 F.3d at 82. The Circuit also noted that the purpose of drawing this clear-cut rule was to "provide[] clear guidance to law enforcement." *Id.* at 89. This rule from *Allen* placed the unlawfulness of arresting Plaintiffs, while they were still in their home and absent exigent circumstances, beyond

21

debate.  There is therefore a triable issue of fact as to whether Officer Longe is entitled to qualified immunity as to Plaintiffs' search and seizure claim.[7]

Officer Longe, however, is entitled to qualified immunity as to Plaintiffs' remaining claims as matter of law.  An officer has immunity from claims for false arrest, false imprisonment, and malicious prosecution where the officer had arguable probable cause.  *See Betts*, 751 F.3d at 83.  "Arguable probable cause exists when 'a reasonable police officer in the same circumstances and possessing the same knowledge was the officer in question could have reasonably believed that probable cause existed in light of well established law."  *Savarese*, 547 F. Supp. 3d at 324 (quoting *Cerrone*, 246 F.3d at 202–03).  In the instant case, for the reasons discussed above, *see supra* Discussion Sections I & II,  arguable probable cause—if not actual probable cause—existed for Plaintiffs' arrest, imprisonment, and prosecution.  With respect to Plaintiffs' unlawful discrimination claim, Plaintiffs have not raised a triable issue of fact that Officer Longe's conduct toward them violated their clearly established statutory or constitutional rights under the Fourteenth Amendment.  *See supra* Discussion Section IV.  Officer Longe is therefore entitled to qualified immunity as to these claims.

## VI.    Municipal Liability

Defendants next move for summary judgment as to all claims against the City of New York.  Dkt. No. 68 at 13.

"Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality, or private actor engaged in governmental action, may not be held liable under Section 1983 on a respondeat

---

[7] Because summary judgment is granted as to Plaintiffs' malicious prosecution, false arrest, and unlawful discrimination claims as the undisputed evidence supports that probable cause existed both for Plaintiffs' prosecution and arrest and no evidence of unlawful discrimination exists concerning that prosecution or arrest, Officer Longe is entitled to qualified immunity as to those claims.

superior theory solely because the municipality employs a tortfeasor." *Haslinger v. Westchester Cnty.*, 2020 WL 5504314, at *2 (S.D.N.Y. Sept. 9, 2020) (citation omitted).  "In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).  The fifth requirement is satisfied where the plaintiff proves that a policy of the municipality caused the constitutional tort.  *Id.*  It may be shown through evidence of "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employee." *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 637 (S.D.N.Y. 2015) (citation omitted).

Here, Plaintiffs have offered no evidence of an official policy of the municipality that caused their constitutional injury.  Summary judgment is therefore granted as to all claims against the City of New York.

## VII.   Former Commissioner O'Neill

In their Complaint, Plaintiffs state that they are suing former Police Commissioner O'Neill in his "official capacity."  Dkt. No. 1 ¶ 9.

"To adequately plead a Section 1983 claim, a plaintiff must 'plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution.'" *Fernandez v. Superintendent, Downstate Corr. Facility*, 2022 WL 443646, at *2 (S.D.N.Y. Feb. 14, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "A defendant's position as a supervisor does not impute personal involvement to that individual—liability under Section 1983 requires that the 'defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)).

The Court grants summary judgment as to all claims against former Commissioner O'Neill. In the instant action, no evidence supports that O'Neill was personally involved in Plaintiffs' search and seizure, arrest, or prosecution. O'Neill's supervisory position is not alone sufficient to sustain a Section 1983 action against him. Any claim against him therefore fails.

## CONCLUSION

The motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 65.


SO ORDERED.

Dated: July 14, 2023
        New York, New York                          _____
                                                            LEWIS J. LIMAN
                                                      United States District Judge